UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 14-CR-20273
v.                            HON. GEORGE CARAM STEEH

D-1 JOHN TROTTER, II, M.D.,
D-3 ELAINE LOVETT

        Defendant.
_____/

OPINION AND ORDER REGARDING THE GOVERNMENT'S
NOTICES OF INTENT TO OFFER 404(b) EVIDENCE (DOC. 103).

      Defendants John Trotter, II, M.D., and Elaine Lovett are charged with health care fraud conspiracy and three counts of health care fraud.  This matter is before the Court on the Government's notice of intent to offer Rule 404(b) evidence at trial against Elaine Lovett.  (Doc. 103).  Lovett responded to this notice, to which the Government replied.  The Court heard arguments on January 9, 2017.  For the reasons stated below, the Court will permit this evidence.

## I. Background

      Count One of the superseding indictment charges Lovett and Trotter with conspiring with each other, Michelle Freeman, and Andrew Hardy, Jr.,

- 1 -

M.D., to knowingly and willfully execute a scheme to defraud Medicare and to obtain money by making materially false and fraudulent representations to Medicare while knowing them to be false. The conspiracy is alleged to have occurred from May 2008 to May 2014.  The indictment specifies that the defendants conspired to unlawfully enrich themselves by submitting false claims to Medicare for physician visits that were not medically necessary, not provided, and/or not eligible for reimbursement; concealing the submission of false and fraudulent claims; and diverting proceeds of this fraud for their personal use and benefit.  (Doc. 90 at ¶ 38).

To achieve this end, the defendants and Freeman allegedly used and/or purchased existing Medicare providers numbers, submitted false claims using provider numbers without the permission of those providers, submitted false statements for services not provided as billed, submitted claims for services provided by an unlicensed doctor, and submitted false enrollment materials that did not disclose Trotter's ownership interest.

Counts Two, Three, and Four allege that Trotter, Lovett, and Freeman executed a scheme to defraud Medicare by submitting false claims for services that were not rendered and were not medically necessary.

The government alleges the following facts regarding the proposed other act evidence. Lovett was involved in a false billing scheme with Beth Jenkins, the owner of an adult day care center. Jenkins purchased Medicare beneficiary information from Glenn English and agreed to use Abix, LLC to process reimbursement claims. Abix was co-owned and controlled by Lovett and Freeman. Lovett instructed Jenkins to code Medicare claims in ways that resulted in larger payments, regardless of whether the claims were truthful or accurate. Knowing certain claims to be false and fraudulent, Lovett billed Medicare and retained a percentage of the reimbursements.

Lovett also allegedly submitted Jenkin's claims to Medicare with the knowledge that Jenkins had failed to disclose her ownership of the adult day care center purportedly providing the claimed services. After Medicare determined that it had overpaid Quality Recreation and Rehab (QRR), Abix advised Jenkins to change WRR's name and to use a straw owner. Jenkins followed this advice, renaming QRR to Procare Rehabilitation (Procare) and falsely identifying her mother as the owner. Following the execution of a search warrant at Procare and on Abix's request, Jenkins opened another adult day care center, 2nd to None, and falsely listed her daughter as the owner. Lovett knew that Jenkins had fraudulently

concealed her ownership of Procare and 2nd to None. Lovett nonetheless submitted claims to Medicare for services purportedly provided at these adult day care centers.

## II. Legal Standard

Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Even if evidence is relevant, it may be inadmissible under another Federal Rule of Evidence. Fed. R. Evid. 402.

"Evidence of a crime, wrong, or other act" is prohibited at trial when used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Court "must apply a three-step analysis to evaluate the admissibility of evidence under Rule 404(b)." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). First, the party seeking to admit 404(b) evidence must demonstrate that the other bad acts occurred. *Id.* (citing *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994)). Second,

the offering party must cite a specific purpose for which the evidence is offered. *Id.* "[T]he government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008). Essentially, the offering party "must show the evidence is probative of a material issue other than character." *Hardy*, 228 F.3d at 750. Finally, the Court must find that the evidence's probative value is not substantially outweighed by the damage of unfair prejudice. *Id.*; *see also* Fed. R. Evid. 403.

### III. Analysis

**A. Relevance**

Lovett argues that this other act evidence is irrelevant because it involves different actors and occurred at a different time. Lovett also objects to the Government's assertion that Abix advised Jenkins to create a new company and use a straw owner. Lovett responds that Freeman provided this advice, not Lovett, and therefore it is not relevant to the current charges. This argument fails.

Even with additional actors and a different time period, this evidence has a tendency to make a fact of consequence – whether Lovett conspired

- 5 -

to commit and did in fact commit health care fraud – more probable. This is true even if Lovett did not advise Jenkins to create new companies and use straw owners. As Freeman's partner in owning and controlling Abix, Lovett may have known about the advice and known that it was made to continue the scheme of defrauding Medicare through false billing. If the Government establishes that Lovett knew about this advice and why it was provided, this evidence would make a fact of consequence more probable. Therefore, the Court finds that this evidence is relevant, with the caveat that the relevancy of Jenkin's testimony regarding Freeman's advice to create new companies and use straw owners is subject to the Government's subsequent proof under Fed. R. Evid. 104(b).

**B. 404(b)**

**1. Proof That The Other Act Occurred**

The Government intends to establish Lovett's prior alleged scheme by offering the testimony of Jenkins. Jenkins is expected to testify that Lovett billed Medicare for services Jenkins did not provide and for companies that Abix had credentialed in the names of straw owners in order to conceal the true source of the claims. The parties do not seriously dispute whether this evidence will be sufficient to establish the alleged scheme between Lovett

and Jenkins. Furthermore, the Court finds that the Government's cited evidence would likely be sufficient to prove this scheme.

### 2. Offered for Proper Purpose

Other acts evidence is only admissible if it is offered to prove something other than character. Fed. R. Evid. 404(b). The Government argues that the evidence of Lovett's alleged scheme with Jenkins should be admitted to prove intent and, if necessary as a defense, knowledge.

"To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) (quotations and citations omitted). "[T]he prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent." *United States v. Benton*, 852 F.2d 1456, 1468 (6th Cir. 1988) (citing *United States v. Burkett*, 821 F.2d 1306, 1309 (8th Cir. 1987)).

Lovett's alleged scheme with Jenkins is substantially similar to all four counts in the indictment. In the other act at issue, Lovett allegedly billed Medicare for services that Jenkins did not provide and for companies credentialed in the name of a straw owner. In the indictment, Lovett is charged with conspiring and executing a scheme to defraud Medicare by

submitting false claims for services that were not rendered, and were medically unnecessary, while knowing them to be false.  Both acts involve Lovett knowingly submitting false claims through companies designed to conceal ownership and management interests.

Lovett's scheme with Jenkins is also reasonably near in time to the specific intent conspiracy offense in this case.  Jenkins has previously testified that her scheme began in January 2008.  The charged crimes allegedly began around March 30, 2009, when Medicare placed three of Trotter's companies on prepayment review.  When evaluating the temporal proximity between intent to distribute drug charges and other acts with the same intent, the Sixth Circuit found that an eight year gap was not too remote and noted, with approval, that "other courts have found no error in the admission of prior bad acts ranging from eight years old to eighteen years old." *United States v. Love*, 254 F. App'x 511, 517 (6th Cir. 2007).  Therefore, Lovett and Jenkins scheme, taking place fifteen months before the current charges, is not too remote.

This evidence is also probative of Lovett's knowledge.  Lovett may argue that she relied on others to ensure the integrity of the claims and therefore did not know that they were fraudulent.  Jenkins' proposed testimony rebuts this argument, asserting that Lovett knew whether the services were

actually provided and billed claims for unprovided services. Lovett may also argue that she had no knowledge of her co-defendant's straw ownerships. If a provider is flagged for review, they can continue to submit claims under another company, so long as they list a straw owner on the Medicare enrollment forms. Jenkins testimony reveals that Lovett billed Medicare claims for Procare and 2nd to None despite knowledge of Freeman's advice and why straw owners were used. This evidence speaks to Lovett's knowledge of fraudulent billing and failure to disclose Trotter's ownership interests.

### 3. 403 Balancing

The evidence of Lovett's involvement in a scheme with Jenkins is more probative than prejudicial. Whether Lovett "defrauded Medicare innocently or intentionally [is] a central issue" of this case. *United States v. English*, 785 F.3d 1052, 1056 (6th Cir. 2015). Thus, evidence that sheds light on her true intentions is highly probative. *Id.* Further, potential prejudice may be mitigated by giving the jury a detailed limiting instruction. *Id.*; *see also Hardy*, 643 F.3d at 153.

### IV. Conclusion

For the reasons stated above, the Court will permit the 404(b) evidence relating to Lovett.

IT IS SO ORDERED.

Dated: January 19, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 19, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---