UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                Case No.  14-20273
vs.                            HON.  GEORGE CARAM STEEH

JOHNNY TROTTER, II, M.D. and
ELAINE LOVETT,

          Defendants.

_____/

OPINION AND ORDER DENYING DEFENDANTS' MOTIONS
FOR JUDGMENT OF ACQUITTAL (DOC. 184 AND 186)
AND MOTIONS FOR NEW TRIAL (DOC. 185 AND 187)

On April 28, 2017, following a 14 day trial, defendants Johnny Trotter,

II, M.D., and Elaine Lovett were convicted of conspiracy to commit health

care fraud or wire fraud, and three counts of health care fraud.  (Doc. 174).

This matter is before the Court on Motions for Judgment of Acquittal

Pursuant to Fed. R. Crim. P. 29 by Trotter, (Doc. 184), and Lovett, (Doc.

186) as well as Motions for New Trial Pursuant to Fed. R. Crim. P. 33 by

Trotter, (Doc. 185), and Lovett (Doc. 187).  For the reasons stated below,

defendants' motions are DENIED.

# I. Legal Standard

## A. Motion for Acquittal Pursuant to Federal Rule of Criminal Procedure 29

"[A] defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Maliszewski,* 161 F.3d 992, 1005 (6th Cir.1998). "In reviewing a claim of insufficient evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Salgado*, 250 F.3d 4338, 446 (6th Cir. 2001) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). The Government "must present substantial evidence as to each element of the offense." *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir. 1985) (internal citations omitted). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967). "The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *Salgado*, 250 F.3d at 446 (citing

*United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir. 1995)).  "In

assessing the sufficiency of the evidence, 'we do not weigh the evidence,

assess the credibility of the witnesses, or substitute our judgment for that of

the jury.'"  *Id.* (citing *United States v. Wright,* 16 F.3d 1429, 1440 (6th Cir.

1994)).  Moreover, the court must "draw all available inferences and

resolve all issues of credibility in favor of the jury's verdict."  *Id.* (citing

*Maliszewski,* 161 F.3d at 1006).

## B. Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the

defendant's motion, the court may vacate any judgment and grant a new

trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  "When

faced with a Rule 33 motion, unlike a motion for judgment of acquittal under

Rule 29, the district court may weigh the evidence and assess the

credibility of the witnesses; '[i]t has often been said that [the trial judge] sits

as a thirteenth juror' when considering a Rule 33 motion."  *United States v.

Curry*, No. 13-20887, 2016 WL 4662339, at *3 (E.D. Mich. Sept. 7, 2016)

(quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)).  "A

motion for new trial is premised on the argument that the jury's verdict was

against the manifest weight of the evidence."  *Id.* (citing *United States v.

*Hughes*, 505 F.3d 578, 593 (6th Cir. 2007)).  "Such motions are generally granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict.  *Id.* (citing *Hughes*, 505 F.3d at 592-93).  "In general, motions for a new trial are disfavored and should be granted with caution."  *Id.* (citing *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991)).  "The defendant bears the burden of proving that a new trial is warranted."  *Id.* (citing *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994)).

## II. Discussion

### A. Motion for Acquittal

#### 1. Count I, Conspiracy

To convict defendants of conspiracy, the Government had to prove that they knowingly and voluntarily joined and participated in an agreement to defraud Medicare.  18 U.S.C. § 1349; Sixth Circuit Pattern Jury Instruction 3.01A Commentary Note.  18 U.S.C. § 1349 does not require the Government to prove an overt act.  Further, the Government need not prove a formal agreement, written or spoken.  Sixth Circuit Pattern Jury Instruction 3.02.  Nor is it required to prove that a defendant "knew every detail or the identity of all the other members involved in the conspiracy." *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000) (internal

citations omitted).  The Government must simply prove that a defendant "knew the object of the conspiracy and voluntarily associated himself with it to further its objectives."  *Id.* (internal citations omitted).  "[A]n agreement must be shown beyond a reasonable doubt," but "the connection between the defendant and the conspiracy need only be slight, and the Government is only required to prove that the defendant was a party to the general conspiratorial agreement."  *Salgado*, 250 F.3d at 447 (internal citations omitted).  Such an agreement may be explicit or the Government may rely solely on "circumstantial evidence that reasonably supports an inference of participation in some common plan."  *United States v. White*, 492 F.3d 380, 395 (6th Cir. 2007) (internal citations omitted).  But "a line must be drawn between valid circumstantial evidence, and evidence which requires a leap of faith in order to support a conviction."  *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991).

Defendants argue that the Government failed to prove an agreement to defraud.  In support, defendants state that they were unaware that Michelle Freeman had failed to identify JTPFS Management on Medicare Enrollment Application forms known as CMS 855.  Although Trotter testified to this point, the jury had the right to weigh this statement against other evidence in the case, including his statement to his attorneys that he did

not want to disclose his ownership or management interest because he would thereafter be flagged by Medicare.

Defendants raise two additional allegations, first, that Lovett testified that no one asked her to falsify billing information, and that, even if someone had, she would not have done so.  Second, that the testimony of Agent Warren and Fed. R. Evid. 404(b) witness Beth Jenkins improperly suggested that fraud was committed by collecting blank billing sheets and later manipulating them at Abix.  The jury had the right to weigh this against other evidence in the case, including the testimony of Bianca Johnson and Jenkins.  Johnson testified that Lovett routinely altered the billing sheets Trotter delivered to Abix and instructed her staff to do the same.  Johnson also testified that Lovett directed her staff to fraudulently add diagnosis codes to at least 85 percent of Trotter's claims and instructed them to rewrite claim forms or fill out blank claim forms with the aid of a cheat sheet.  Furthermore, Jenkins testified that Lovett instructed her to hire individuals to create false progress notes and bill for services that Lovett knew had not occurred.  Jenkins also testified that, when Medicare audited her company, Lovett advised her on how to circumvent the audit and create a new company with a straw owner.

Finally, defendants argue that the only evidence connecting them to each other is the innocent fact that Trotter used Lovett's company, Abix, to bill his claims.  In addition to the evidence described above, this statement is refuted by evidence that the defendants billed Medicare for services that were never provided and evidence of their efforts to circumvent prepayment review through the use of entities that did not disclose Trotter's ownership or management interest.  Furthermore, the defendants' own testimony revealed that Trotter frequently visited Abix to discuss billing, including the types of claims and the rendering physician and office.

Defendants also argue that, even if there was a conspiracy, the Government did not prove that they joined knowingly and voluntarily. Lovett asserts that she did not know which services were not rendered or not medically necessary.  Trotter compares his case to *United States v. Agbebiyi*, 575 F. App'x 624 (6th Cir. 2014), where the Sixth Circuit affirmed a conviction for health care fraud.  Trotter compares the evidence presented in *Agbebiyi* with that in his case, and asserts that he must be acquitted because there is no evidence that nerve blocks were objectively unreasonable, or that any test results were physiologically impossible, or that any patient received compensation for visiting his clinics.  Trotter also says there is no evidence that he performed a nerve block over a patient's

objection, that he knew of or authorized falsifying patient charts or billing records, that he knew of the incomplete CMS 885 forms, or that he instructed someone to falsify CMS 1500 health insurance claim forms.

The Government is not required to prove that defendants "knew every detail or the identity of all the other members involved in the conspiracy." *Crossley*, 224 F.3d at 856.  Instead, it need only prove that they "knew the object of the conspiracy and voluntarily associated himself with it to further its objectives."  *Id.*  The Government's evidence satisfies this burden.  It includes information that that Trotter recruited family members to act as sham owners, exploited other physicians' provider numbers, and lied to his attorneys.  It also includes information that Lovett listed her son and his wife, not Trotter, as the owner for Healthcare Administrative Services in order to circumvent prepayment review by concealing Trotter's ownership or management interest.

Finally, Trotter argues that the Government failed to prove an overt act to advance the conspiracy.  But U.S.C. § 1349 does not require the Government to prove an overt act.  Viewing the evidence in the light most favorable to the prosecution, the Court finds that the jury could have found the essential elements of the crime beyond a reasonable doubt.

## 2. Counts II – IV, Health Care Fraud

To convict defendants of health care fraud, the Government had to prove that they "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Semrau*, 693 F.3d 510, 525 (6th Cir. 2012) (internal citations omitted). "Intent can be inferred from efforts to conceal the unlawful activity, from misrepresentation, from proof of knowledge, and from profits." *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007) (internal citations omitted). "[T]he question of intent is generally considered to be one of fact to be resolved by the trier of facts," whose determination "should not be lightly overturned." *United States v. Wagner*, 382 F.3d 598, 612 (6th Cir. 2004) (internal citations omitted).

Trotter asserts that the Government failed to prove each element. He makes a variety of arguments in support of this assertion including a lack of evidence that he knew what claims were submitted by Abix or other physicians, falsified patient records or billing sheets, failed to properly complete Medicare forms including 855s and 1500s, and did not render the billed services. Lovett argues that the Government failed to prove

- 9 -

knowledge or intent, principally because there is no evidence that she knew what did or did not happen on the dates specified in the indictment.

Count II is based on a claim for nerve blocks that Zakiya Antione purportedly provided to Otis Fenderson at St. Joseph's.  Fenderson testified that he never visited St. Joseph's, but rather, only Grace, and never received anything like a nerve block at that location.  Fenderson's patient file includes a progress note from Grace, not St. Joseph, signed by Karimah Joseph, not Antione, which lacks any explicit reference to nerve blocks.  Trotter argued that although the phrase "nerve block" does not appear on the progress notes, it is inferred based on his notation procedure.  Fenderson's note included a notation on the first line. According to Trotter's purported procedure, physicians write a body part on the first item of a progress note to report a nerve block to that particular area.  Physicians write a body part on the second line of the progress note to report a B12 injection to that particular area.

Counts III and IV are based on claims for seven nerve blocks that Dr. Hawkins purportedly administered to Ursula Kruzman at St. Joseph's. Kruzman testified that, while she was Trotter's patient, she never visited St. Joseph's and never received a nerve block.  Hawkins testified that, while she worked for Trotter, she never worked at St. Joseph's and never

administered a nerve block.  Like Fenderson, Kruzman's patient file merely

includes writing on the first line of the progress note rather than an explicit

reference to nerve blocks.

Hawkins also testified about conversations she had with the

defendants regarding her billing.  Hawkins stated that she became

concerned after Kruzman provided her with a Medicare bill listing Hawkins

as the physician providing Kruzman services at St. Joseph's.  But Hawkins

had not worked at St. Joseph's or provided these services.  Hawkins

thereafter contacted Lovett; who asked "did you tell Medicare on Dr.

Trotter."  Hawkins then spoke about false billing with Trotter, who stated

that just "because you don't know doesn't mean you're not guilty."

Moreover, the jury was presented with evidence including:

- an altered billing sheet found at Abix;
- an email between the defendants where Trotter described a process "to devise a strategy of which to implement first and when, so that attention is not attracted and money is not held up during this time period of transition;"
- testimony that Trotter delivered billing sheets to Abix, and there, with the aid of Lovett's cheat sheet, Abix staff billed Medicare;
- Trotter received Medicare reimbursements and Lovett retained a percentage of those reimbursements.

Viewing the evidence in the light most favorable to the prosecution,

the Court finds that the jury could have found the essential elements of

health care fraud beyond a reasonable doubt.

**B. Motion for New Trial**

**1. Weight of the Evidence**

Defendants argue that the evidence of their guilty knowledge and intent was insufficient.  They assert that the Court should make a credibility determination that recognizes their innocent explanation for their actions. They argue that their testimony is more reliable than that of the Government witnesses, some of whom testified under immunity or in exchange for leniency, while the credibility of other witnesses was improperly bolstered.  Defendants also claim that other witnesses had engaged in alcohol and drug use, undermining their credibility.

Viewing the evidence as a "thirteenth juror," the Court finds that the jury's verdict was not against the manifest weight of the evidence presented at trial.  The Government provided testimony and corroborating evidence like patient files, bank and travel records, emails and cheat sheets that satisfied the elements of health care fraud and conspiracy to commit health care and wire fraud.  The jury's verdict on these charges was not against the great weight of the evidence presented at trial.

Moreover, contrary to defendants' arguments, the Government's examination of Bianca Johnson does not constitute improper vouching or bolstering.  "Improper vouching occurs when a prosecutor supports the

credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). "Generally, improper vouching involves either blunt comments [ ] or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or the credibility and truthfulness of witnesses and their testimony [ ]." *Id.* (internal citations omitted). "Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Id.* at 551.

The Government "did not offer any personal observations or opinions on the veracity of [Johnson], nor did [it] place the prestige of the Government behind [Johnson's] credibility." *United States v. Trujillo*, 376 F.3d 593, 608–09 (6th Cir. 2004). The Government's questions and comments merely addressed the terms of Johnson's grant of immunity. Furthermore, the Government "did not imply that [Johnson's] testimony was corroborated by any evidence known to the Government but not presented to the jury. Thus, there was no improper bolstering." *Id.* Finally, the jury was also instructed that Johnson and George Evans were promised that they would not be prosecuted in exchange for their testimony, and, as

- 13 -

such, their testimony should be considered with more caution than the testimony of other witnesses.  (Doc. 175 at PageID 3858).

### 2. Legal Errors at Trial

A court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The "interest of justice" standard in Rule 33 allows the grant of a new trial where substantial legal error has occurred.  *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).  Defendants argue numerous legal errors, including prosecutorial misconduct, admission of patient files and data claims, and improper expert testimony.

### a. Prosecutorial Misconduct

Defendants argue that the Government committed prosecutorial misconduct by mischaracterizing Beth Jenkins' testimony and improperly bolstering and vouching Bianca Johnson's testimony.  The Sixth Circuit reviews claims of prosecutorial misconduct under a two-step analysis. First, courts must determine "whether the statements were improper." *Francis*, 170 F.3d at 549 (citing *United States v. Krebs,* 788 F.2d 1166, 1177 (6th Cir.1986)).  A prosecutor's statement is improper if it "refers to facts not in evidence or the prosecutor's personal opinion," *United States v. Uwazurike*, 580 F. App'x 440, 449 (6th Cir. 2014), "misstate[s] evidence,"

- 14 -

*United States v. Carter*, 236 F.3d 777, 785 (6th Cir. 2001), or improperly bolsters or vouches for a witness' credibility, *Francis*, 170 F.3d at 550-51.

If the statements appear improper, the court must "look to see if they were flagrant and warrant reversal." *Id.* (citing *United States v. Carroll,* 26 F.3d 1380, 1388 (6th Cir.1994)). Courts use four factors to assess flagrancy; "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Id.* at 549-50 (internal citations omitted).

The Court has addressed many of the defendants' concerns with Johnson's testimony above, concluding that the Government did not improperly bolster or vouch for Johnson. Defendants also argue that the Government misled the jury with Johnson's testimony during rebuttal arguments. Defendants argue that the Government utilized exhibit GX 302 in its rebuttal argument while Johnson's testimony instead concerned exhibit GX 180. But the Government discussed both exhibits, GX 180 and 302, during Johnson's testimony. She testified that these exhibits were examples of versions of a document that changed over time. These statements, therefore, are not improper.

Defendants also argue that the Government mischaracterized Jenkins' testimony in arguing that fraud occurred in the present case. Jenkins testified that Lovett instructed her to employ a social worker who, rather than treat beneficiaries, completed blank progress notes at Abix, allowing Abix to bill for unrendered services on Jenkins' behalf.  Agent Warren later testified to finding partially complete billing sheets at Abix. Warren stated that he believed this indicated that the billing sheets were being filled out at Abix, as opposed to the location where services were reported to have been rendered.  Defense counsel objected that Warren was merely speculating.  The Government responded that Jenkins' testimony illustrated that this is "how her fraud was carried out."  (Doc. 161 at PageID 2856).  This statement did not misstate the evidence.  The jury could properly consider Jenkins' testimony, a 404(b) witness, to discern the defendant Lovett's intent, knowledge, and absence of mistake.

Furthermore, the Court finds that the statements complained of by defendants do not warrant reversal.  They were not misleading and they were relatively isolated.  The three areas of alleged prosecutorial misconduct were all isolated from each other and defendants do not demonstrate repeated misconduct on the same topic.  Defendants argue that the Government's persistent mischaracterization, bolstering, and

improper comments show that the conduct was deliberate.  The Court

disagrees with defendants' characterization and finds no other evidence to

suggest that the Government's alleged misconduct was deliberate.  Finally,

the total strength of the evidence against defendants' precludes a finding of

flagrant misconduct.

### b. Admission of Patient Files and Data Claims

Defendants argue that the admission of patient files and claims data

for individuals who did not testify was irrelevant.  Defendants' argument

fails.  The evidence was relevant to the scheme to defraud charged in

Count I of the indictment.

Defendants also argue that this evidence violated the Confrontation

Clause.  The Confrontation Clause prohibits the "admission of testimonial

statements of a witness who did not appear at trial unless he was

unavailable to testify."  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

A statement is "testimonial" if the declarant "intended to bear testimony

against the accused."  *United States v. Collins*, 799 F.3d 554, 556 (6th Cir.

2015).  Business records are generally not testimonial for the purposes of

the Confrontation Clause.  *Crawford*, 541 U.S. at 56.  Business records

"are generally admissible absent confrontation not because they qualify

under an exception to the hearsay rules, but because – having been

created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009).

Defendants rely on *Melendez-Diaz* to argue that this evidence contains testimonial statements.  But their comparison to the forensic laboratory reports at issue in *Melendez-Diaz* is misplaced.  There, the Supreme Court found that the forensic laboratory reports were "quite plainly affidavits" that "incontrovertibly" made "a solemn declaration or affirmation made for the purpose of establishing or proving" a fact in question; whether "the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine."  *Id.* at 310 (internal citations omitted).  The forensic laboratory reports were recognized to discuss "the precise testimony the analysts would be expected to provide if called at trial" and were deemed "functionally identical to the live, in-court testimony, doing precisely what a witness does on direct examination."  *Id.* at 310-11 (internal citations omitted).  The Court also recognized that the reports were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  *Id.* at 311 (internal citations omitted).  Moreover, the "sole purpose" of the documents was determined

to be "provid[ing] prima facie evidence of the composition, quality, and the
net weight" of a substance analyzed for evidentiary purposes in a criminal
prosecution.  *Id.* (internal citations omitted).

The patient files and claims data at issue here are not testimonial
statements.  This evidence was routinely prepared for the purpose of
medical diagnosis or processing claims; not for litigation, much less
criminal prosecution.  *See United States v. Garner*, 148 F. App'x 269, 274
(6th Cir. 2005); *United States v. Williams*, 662 F. App'x 366, 376 (6th Cir.
2016).

Defendants also argue that the claims data was incomplete and
inaccurate because the Government's summaries did not include
information from Box 32 of the CMS 1500 forms.  Defendants did not object
on this ground at trial.  While they now contest the summary exhibits, they
do not specifically dispute the accuracy of the underlying data.  Moreover,
along with the summaries, the jury received the underlying documents.
The jury could have viewed those documents and discredited the
summaries while deliberating.

Finally, defendants argue that the jury had no basis to evaluate the
summaries.  This argument fails.  The charged scheme involved the
number of nerve blocks billed, and those high numbers connected Trotter

- 19 -

to the clinics that, on paper, were owned by other individuals.  The trial also
included Barnett's testimony that Medicare flagged Trotter because of the
high number of nerve blocks, and Trotter himself testified that nerve blocks
are a last resort, experimental, and a temporary option.  The high number
of nerve blocks was significant corroboration of patient testimony that no
nerve blocks were provided.

### c. Expert Testimony

Defendants argue that Agents Barnett and Warren were listed as fact
witnesses under Fed. R. Evid. 701, but in fact testified as expert witnesses
in violation of Fed. R. Evid. 702.  Lay testimony "results from a process of
reasoning familiar in everyday life, whereas an expert's testimony results
from a process of reasoning which can be mastered only be specialists in
the field."  *United States v. Faulkenberry*, 614 F.3d 573, 588 (6th Cir, 2010)
(internal citations omitted).  Expert testimony, unlike lay testimony, relies on
"scientific, technical, or other specialized knowledge within the scope of
Rule 702."  Fed. R. Evid. 701.

Warren testified as a summary witness, not as an expert.  He did not
testify about his opinion that fraud had occurred, indicate that figures did
not line up, or state his conclusions on the ultimate issue of fraud.  Instead,

he explained summary exhibits.  Further, he did not interpret a patient file but rather simply testified to what the files did and did not contain.

Barnett testified based on his personal knowledge of his own investigation of the defendants. He explained the facts as he discovered them, independent of any "scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Testimony by Medicare auditors about "the facts as they personally perceive them" during an audit "properly constitutes lay testimony."  *United States v. White*, 492 F.3d 380, 405 (6th Cir. 2007).  Moreover, Barnett's testimony did not implicate the issues discussed in *United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013).  In *Freeman*, an FBI agent's interpretation of wire-tapped phone calls was ruled to be improper lay testimony because the agent "repeatedly substantiated his responses and inferences with generic information" and "never specified personal experiences that led him to obtain this information."  *Id.* at 596.  The court determined that the agent had "failed to explain . . . what experience he had that the jurors themselves did not have. . . ."  *Id.* at 597.  The court was further concerned that, because the calls the agent interpreted involved mostly ordinary language, the "aura of expertise and authority" of an FBI agent may have improperly swayed the jury.  *Id.* at 599.  Unlike the agent in *Freeman*,

- 21 -

however, Barnett testified in detail about his discovery of the connection between Trotter and the entities at issue.  He related his experience so that the jury could understand how Medicare was able to discover that the defendants were using these entities to bill Medicare.

### d. Cumulative Effect

For the reasons stated above, the Court finds that no substantial legal error occurred when considering the allegations separately or cumulatively. A new trial is not warranted.

## III. Conclusion

For the reasons stated above, defendants Motions for Judgment of Acquittal are DENIED.

IT IS SO ORDERED.

Dated:  September 18, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 18, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---